*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TRAVUN BASKERVILLE,

Defendant-Appellant.

FOR PUBLICATION
August 20, 2020
9:05 a.m.

No. 345403
Wayne Circuit Court
LC No. 17-008359-01-FC

Before: MURRAY, C.J., and RONAYNE KRAUSE and TUKEL, JJ.

RONAYNE KRAUSE, J.

A jury convicted defendant of second-degree murder, MCL 750.317;[1] human trafficking enterprise involving death, MCL 750.462d(b), MCL 750.462f(1)(d); human trafficking of a minor involving commercial sexual activity, MCL 750.462e(a); commercial child sexually abusive activity, MCL 750.145c(2); possession of child sexually abusive material, MCL 750.145c(4)(a); felon in possession of a firearm, MCL 750.224f; and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to prison terms of 60 to 100 years each for the murder and human trafficking enterprise involving death convictions, 25 to 50 years each for the human trafficking of a minor for commercial sexual activity and the commercial child sexually abusive activity convictions, 1 to 15 years for the possession of child sexually abusive material conviction, one to five years for the felon-in-possession conviction, and a two-year term of imprisonment for the felony-firearm conviction. The trial court ordered that defendant's felony-firearm sentence be served consecutive to all of his sentences, and that his sentence for human trafficking enterprise involving death be served consecutive to his remaining five sentences, which are to be served concurrently. Defendant appeals as of right. We affirm defendant's convictions and sentences, but we remand for the ministerial task of correcting his sentencing guidelines scores. This appeal is being decided without oral argument pursuant to MCR 7.214(E)(1).

---

[1] The jury acquitted defendant of an original charge of first-degree premeditated murder, MCL 750.316(1)(a), and found him guilty of the lesser offense of second-degree murder.

-1-

I. BACKGROUND

Defendant's convictions arise from the fatal shooting of Donald Calhoun during a pay-for-sex "date" with 17-year-old AB at a Detroit house on the morning of June 1, 2017. AB testified, pursuant to an immunity agreement, that she began dating defendant when she was 16. She did not want to have sex for money; however, defendant persuaded her to do so, took the money she made, controlled and dictated all details of the enterprise and individual transactions, and refused her requests to stop by using physical violence against her. In the instant incident, after a "date" was arranged, Calhoun met with AB at her house on Burgess Street. According to AB, after engaging in oral sex using a condom as AB required, Calhoun asked to engage in vaginal intercourse without using a condom. AB refused and told Calhoun to leave. In turn, Calhoun demanded his money back. Some manner of dispute between AB and Calhoun ensued, whereupon defendant entered the room with a "long gun." Defendant and Calhoun exchanged words, and Calhoun suggested that they go outside to settle the matter. Defendant shot Calhoun instead. AB's child, who was then one year old, was in a bedroom further back in the house at the time.

After "an hour or two," defendant and AB dragged Calhoun's body out of the house, put it in a dumpster they found next to the vacant house next door, and pushed the dumpster to the detached garage of another vacant house on the other side of a grassy field. They also moved Calhoun's vehicle. The next day, on June 2, Calhoun's sister filed a missing person's report, and an investigation eventually led the police to the Burgess residence. After making several false statements, which she explained were at least partially pursuant to defendant's instructions,[2] AB told the police that defendant shot Calhoun during a dispute. On July 7, AB led police to Calhoun's body, which was badly decomposed and identified by Calhoun's sister on the basis of his tattoos. AB testified that she only observed one gun in the house or in defendant's possession, and she did not see Calhoun with a gun. However, Calhoun's autopsy found that Calhoun had been shot by bullets fired from two different guns. AB testified that she stopped having sex for money when defendant was arrested and incarcerated.

II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecution did not present sufficient evidence to prove beyond a reasonable doubt that he committed second-degree murder or engaged in human trafficking of a minor involving commercial sexual activity. We disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, we must "review[] the evidence in a light most favorable to the prosecutor to determine whether any tier of fact could find the essential elements of the

---

[2] Telephone calls defendant made to AB "sometime in July" were played for the jury. We have not been able to find a transcript of those calls, nor were the calls themselves given to this Court in any fashion. Apparently, the calls consisted of efforts by defendant either to dissuade AB from talking to the police or to persuade her to provide the police with a fictitious version of events. AB characterized defendant's calls as "[h]e's saying all this to try to save [him]self from me talking, that's why he's saying that."

crime were proven beyond a reasonable doubt." *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012) (internal quotation omitted). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). All conflicting evidence, and any reasonable inferences that may be drawn from that evidence, must be resolved in favor of the prosecution. *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012).

Before we address any specific convictions, the gravamen of defendant's argument on appeal is that most of the evidence against him consisted of AB's testimony, which he alleges was not credible and not corroborated, so it should not be relied upon. Defendant notes that the trial court harbored some doubt that AB told the complete truth regarding the circumstances of Calhoun's murder, especially given the discrepancy between her testimony that she only saw one gun and the forensic evidence that Calhoun had been shot by two guns. We do not dismiss the trial court's reservations. See *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881). However, although it is sometimes appropriate for a court to remove a credibility assessment from the jury's consideration, such circumstances are extremely rare and require testimony that borders on being impossible. See *People v Lemmon*, 456 Mich 625, 642-646; 576 NW2d 129 (1998). Otherwise, only the jury may determine the credibility of a witness or the weight to be afforded any evidence, and it may convict a defendant based solely on the testimony of an accomplice. *People v Koukol*, 262 Mich 529, 532-533; 247 NW 738 (1933); *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). "[T]he credibility of witnesses is a matter of weight, not sufficiency." *People v Scotts*, 80 Mich App 1, 9; 263 NW2d 272 (1977).

"[A] jury is free to believe or disbelieve, in whole or in part, any of the evidence presented." *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). The jury may choose to believe part of a witness's testimony and disbelieve another part of the same witness's testimony. See *Ferris v Neville*, 127 Mich 444, 449-451; 86 NW 960 (1901); *Detroit Elec Light & Power Co v Applebaum*, 132 Mich 555, 557-558; 94 NW 12 (1903). Defense counsel thoroughly explored various weaknesses in AB's testimony. The trial court properly instructed the jury to exercise caution in considering the testimony of an accomplice who had received an immunity agreement in exchange for testimony, that it could consider a witness's prior inconsistent statements in determining the witness's believability, and that it was permitted to believe that a witness lied about some things but told the truth about others. AB's testimony was not so incredible that it should have been taken from the jury. The jury was fully aware that AB's testimony was potentially problematic, and it nevertheless chose to believe AB, as was the jury's right. Therefore, we reject defendant's argument that his convictions could not be based on AB's testimony alone.

## A. SECOND-DEGREE MURDER

The elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). "Malice is defined as 'the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.' " *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002) (citation omitted). Second-degree murder evolved from common-law murder, under which "malice aforethought" was understood for centuries to be the "grand criterion"

distinguishing murder from less "wicked" homicides. *People v Hansen*, 368 Mich 344, 350-351; 118 NW2d 422 (1962); *People v Mesik (On Reconsideration)*, 285 Mich App 535, 544-547; 775 NW2d 857 (2009).

AB's testimony at trial—which the jury was free to, and clearly did, believe—was that defendant intervened in a dispute between AB and Calhoun, which led to further arguing between Calhoun and defendant. When Calhoun suggested that they step outside, defendant shot Calhoun and then hid his body in a dumpster. The evidence therefore shows that defendant intentionally killed Calhoun; and no mitigating circumstances, such as self-defense or an accident, were present to negate the clear presence of malice. See *Mesik*, 285 Mich App at 546. Defendant argues that AB did not know how many times defendant fired, and of the three bullets recovered from Calhoun's body, there was no evidence of how much damage each bullet caused. Thus, defendant concludes that Calhoun *could* have sustained a fatal wound from only one gunshot from the mysterious second gun, which *could* have been fired by someone other than defendant. Although this may be a plausible hypothesis, we must decline defendant's invitation to invade the jury's role of determining what inferences should be drawn from the evidence. The evidence, viewed in a light most favorable to the prosecution, was sufficient to enable the jury to find beyond a reasonable doubt that defendant committed the crime of second-degree murder.

## B. HUMAN TRAFFICKING OF A MINOR INVOLVING COMMERCIAL SEXUAL ACTIVITY

MCL 750.462e(a) provides that a person shall not "[r]ecruit, entice, harbor, transport, provide, or obtain by any means a minor for commercial sexual activity." The elements of the offense, as delineated in M Crim JI 36.4a, are: (1) "that the defendant participated in an enterprise that engaged in forced labor or services or commercial sexual activity involving a person or persons less than 18 years old"; (2) "that the defendant knew that the enterprise was engaged in forced labor or services or commercial sexual activity with this person or persons"; and, (3) "that the defendant benefited financially or received anything of value from [his] participation in the enterprise."

AB testified at trial that defendant manipulated her into engaging in pay-for-sex activities when she was a minor; that she informed defendant that she wanted to stop this activity, but defendant would not let her stop, including through the use of physical violence; that defendant set up and controlled almost every aspect of the pay-for-sex enterprise; and that she turned all the money for her pay-for-sex encounters over to defendant. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant committed the crime of human trafficking of a minor involving commercial sexual activity. Although, as noted, defendant argues that there was no evidence to corroborate AB's testimony, such corroboration is not required under the human-trafficking statute. See MCL 750.462g(1) ("if a victim testifies, that testimony need not be corroborated"). The prosecution presented sufficient evidence to support defendant's conviction of human trafficking of a minor involving commercial sexual activity.

## III. PHOTOGRAPHIC EVIDENCE

Defendant next argues that the trial court abused its discretion by admitting color photographs depicting Calhoun's decomposed body. Defendant did not object to the admission of the photographs altogether, but only to doing so in color rather than in black-and-white. We disagree. We review a trial court's decision to admit or exclude photographic evidence for an abuse of discretion, and the decision will not be disturbed on appeal absent a clear abuse of that discretion. *People v Head*, 323 Mich App 526, 539-540; 917 NW2d 752 (2018). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013).

The general rule is that "relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, the[] rules [of evidence], or other rules adopted by the Supreme Court"; and "[e]vidence which is not relevant is not admissible." MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible." *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011). Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice under MRE 403. MRE 403 is not intended to exclude "damaging" evidence, because any relevant evidence will be damaging to some extent. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod on other grounds 450 Mich 1212 (1995). Rather, MRE 403 excludes only *unfairly* prejudicial evidence, meaning there is a serious danger that the jury would give evidence with relatively little logical relevance undue weight, or that the evidence would tend to arouse the jury's emotions to a degree that would preclude proper consideration of the actual merits of the case. *Id*. at 75-76; *People v Fisher*, 449 Mich 441, 451-452; 537 NW2d 577 (1995).

The prosecution is not obligated to use the least prejudicial evidence possible. *Fisher*, 449 Mich at 452. The prosecution may not introduce evidence specifically calculated to inflame the jury's emotions, especially if the evidence has little other substantive value. *Mills*, 450 Mich at 77. However, the "unfairness" of potentially emotionally inflammatory evidence is mitigated where the proponent lacks any less-prejudicial way to establish a critical issue. *Id*. at 76. The gruesomeness of a photograph, standing alone, is insufficient to merit its exclusion. *Id*. at 77. "The proper inquiry is always whether the probative value of the photographs is substantially outweighed by unfair prejudice." *Id*. at 76.

We have reviewed the challenged color photographs. Most of the photographs were of clean skeletal remains, two were of the dumpster in which Calhoun was found without any body parts readily obvious, two were x-ray images that were already black-and-white, one is of three men wearing black clothing strapping a completely wrapped bundle (presumably a body) to a stretcher, and two are close-up photographs of Calhoun's tattoos. Only the latter two show any obvious indication of being decomposing human remains. The latter two are by far the most disturbing, but they do not appear to be purposelessly gruesome. The photographs further served as corroboration of AB's testimony concerning what she observed and her own actions during the incident, and also served as illustration and corroboration for the testimony provided by an evidence technician and the medical examiner. We are unconvinced that most of the photographs

would have had much less emotional impact in black-and-white than in color, and any details would have been more difficult to discern. The photographs of Calhoun's tattoos might indeed have had less emotional impact in black-and-white, but might also have been rendered incomprehensible.

In any event, a relevant photograph is not inadmissible merely because it may arouse emotion. These photographs were not offered simply to inflame the jury. The prosecutor explained that the color photographs were necessary "for clarity," and that the least objectionable ones, from many available, had been selected. Defense counsel conceded that there were other photographs that were "[w]ay worse." The trial court agreed that the selected photographs are "the least traumatic of the pictures that allow the people to still convey the relevant information . . . " In sum, the trial court endeavored to judiciously balance the probative value of the evidence against its prejudicial effect, and its decision to admit the photographs, which were relevant to material issues at trial, was within the range of reasonable and principled outcomes. Accordingly, the trial court did not abuse its discretion by admitting them.

## IV. CONSECUTIVE SENTENCES

Defendant challenges the trial court's decision to order that his sentence for human trafficking enterprise involving death be served consecutive to his other sentences. We disagree.

"In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (citation and quotation marks omitted). Contrary to defendant's claim, MCL 750.462f(5) authorized the trial court to impose a consecutive sentence for a violation of the human trafficking statute. "[T]he decision to impose a consecutive sentence when not mandated by statute is reviewable for an abuse of discretion." *People v Norfleet*, 317 Mich App 649, 664; 897 NW2d 195 (2016). To facilitate appellate review, a trial court must "articulate on the record the reasons for each consecutive sentence imposed." *Id*. at 664-665. The court is required to "give particularized reasons" when imposing a consecutive sentence. *Id*. at 666.

The trial court's reasons, considered in conjunction with the Legislature's express authorization of consecutive sentences, were sufficient to demonstrate an outcome within the range of reasonable and principled outcomes under the circumstances of this case. The trial court extensively described defendant's treatment of 16- and 17-year-old AB as essentially slavery, and marveled at how he had somehow never been charged with any crimes regarding AB's son. The trial court observed that it had never seen a sentencing guidelines score as high as defendant's score. It also observed that defendant likely "would have got[ten] away with this whole thing" if he had called the police and claimed he was defending AB from an assault after the murder. Instead, defendant lured Calhoun to have sex with "a child" and then "put him away like a piece of trash to rot" and severely undermined himself with his telephone calls to AB from jail. It is apparent that the trial court considered the offenses and the offender and decided that consecutive sentences were appropriate under the circumstances.

Defendant argues that, given his age at the time of sentencing, his 60-year minimum sentence is already a "death sentence," and, therefore, consecutives sentences is "overkill" and

disproportionate under the circumstances of this case.[3]  However, because the individual sentences do not exceed the maximum punishment allowed for each sentence, which is life imprisonment, MCL 750.462f(1)(d) and MCL 750.317, the aggregate of the sentences is not disproportionate. See *Ryan*, 295 Mich App at 401 n 8.  Consequently, we conclude that the trial court did not abuse its discretion.

## V.  SCORING OF OFFENSE VARIABLES

In his last claim, defendant argues that he is entitled to be resentenced because the trial court erroneously scored several offense variables (OVs) of the sentencing guidelines.[4]  Although we agree that some of the offense variables were erroneously scored, we conclude that resentencing is not required.  When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence."  *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).  "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo."  *Id.*

### A.  OFFENSE VARIABLE 5

The trial court scored OV 5 at 15 points for defendant's murder conviction.  "OV 5 is scored when a homicide or homicide-related crime causes psychological injury to a member of a victim's family."  *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017) (footnote omitted).  A score of 15 points is appropriate if "[s]erious psychological injury requiring professional treatment occurred to a victim's family."  MCL 777.35(1)(a).  "In this context, 'serious' is defined as 'having important or dangerous possible consequences.' "  *Calloway*, 500 Mich at 186 (citation omitted).  In scoring OV 5, a trial court "should consider the severity of the injury and the consequences that flow from it, including how the injury has manifested itself before sentencing and is likely to do so in the future, and whether professional treatment has been sought or received."  *Id.*

At sentencing, Calhoun's sister gave an impact statement, expressing her anger, grief, and despair at the loss of her younger brother.  She expressed that Calhoun's murder "has forced [her] to live an unfamiliar life," "[f]orced [her] to take medication in order to get a full night's rest," and "forced [her] to deal with [her] nightmares."  Calhoun's murder had caused her to be less sociable,

---

[3] The principle of proportionality governs the reasonableness of sentences and "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender."  *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990).

[4] The trial court scored the guidelines for defendant's convictions of both second-degree murder and human trafficking enterprise involving death.  We have only been able to find the PSIR sentencing guidelines worksheet for defendant's murder conviction in the record, but the trial court made a commendable record of its scoring decisions for both convictions at the sentencing hearing.

less lively, "not real productive at work," and "depressed and sad most days." Since Calhoun's murder, she "wake[s] in the middle of the night with a total sadness in the pit of [her] stomach. The pain is the way [she] start each and every day." She indicated that her family lived within five miles from where Calhoun was murdered, and that her "stomach turns, [she] get nauseous, [her] palms begin to sweat and [she] get[s] a pounding headache whenever [she is] close to that area." She also expressed how her children and husband were suffering, and noted that her daughter had "become withdrawn and sad." These statements provided a reasonable basis for the court to conclude that Calhoun's family members suffered serious psychological injury.[5]

Defendant challenges the 15-point score on the basis that there was no evidence that psychological treatment was necessary, sought, or intended to be sought by any member of Calhoun's family. However, MCL 777.35(2) directs a score of 15 points if the "serious psychological injury *may* require professional treatment." (Emphasis added.) "In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.35(2). OV 5 "does not require proof that a victim's family member has already sought or received, or intends to seek or receive, professional treatment." *Calloway*, 500 Mich at 186. Rather, "[p]oints are also properly assessed when the serious psychological injury may require professional treatment in the future, regardless of whether the victim's family member presently intends to seek treatment." *Id.* at 188. The nature and descriptions of the psychological effects of Calhoun's death on his family members were sufficient to establish that even if professional treatment had not yet been sought, it may be necessary in the future. Consequently, the trial court did not clearly err by finding that the evidence supported a 15-point score for OV 5.

## B. OFFENSE VARIABLE 9

The trial court scored OV 9 at 10 points for both defendant's murder conviction and his human trafficking involving death conviction. Ten points must be assessed for OV 9 if "[t]here were 2 to 9 victims who were placed in danger of physical injury or death." MCL 777.39(1)(c). Each person placed in danger of injury or death during the commission of the sentencing offense is considered a "victim" for the purposes of scoring OV 9. *People v Gullett*, 277 Mich App 214, 217; 744 NW2d 200 (2007). "A person may be a victim under OV 9 even if he or she did not suffer actual harm; a close proximity to a physically threatening situation may suffice to count the person as a victim." *People v Gratsch*, 299 Mich App 604, 624; 831 NW2d 462 (2013), vacated in part on other grounds by 495 Mich 876 (2013). OV 9 may not be scored on the basis of conduct outside the particular criminal transaction that gave rise to the sentencing offense. *People v Sargent*, 481 Mich 346, 350; 750 NW2d 161 (2008); *Gullett*, 277 Mich App at 217-218.

The trial court's score of 10 points for OV 9 for both convictions was based on the danger posed to AB's one-year-old child by defendant's shooting of Calhoun and by the child being left alone while defendant and AB moved Calhoun's body and vehicle. We applaud the trial court for its concern for the child. However, we cannot find any evidence in the record that the child was in close proximity when defendant shot Calhoun. AB testified that the shooting occurred in the front living room, and the child was in his bedroom, which was toward the back of the house.

---

[5] "When calculating scores under the sentencing guidelines, a trial court may consider all the evidence in the trial court record." *People v Dickinson*, 321 Mich App 1, 21; 909 NW2d 24 (2017).

Because bullets can travel a very long distance, "close proximity" to a physically threatening situation with a gun may be much more extensive than "close proximity" to, say, a physically threatening situation with a knife. However, defendant emerged from the back of the house, so the child would have been behind defendant and thus not in any potential line of fire, and no other specific individuals who might have been in the line of fire have been identified. The record reflects that the child was left alone for some period of time, but only after the homicide had occurred. In any event, the record does not clearly indicate for how long the child was left alone, or whether the child was really endangered as a consequence. The child was in an obviously unhealthy environment, but the evidence does not indicate that defendant's procurement of the pay-for-sex "dates" posed any specific danger of *physical* harm to the child.

The evidence does not support a finding that defendant's conduct during the offenses of second-degree murder or human trafficking involving death placed the child "in danger of physical injury or death" for purposes of scoring OV 9. Accordingly, as the prosecution concedes, the trial court erred by assigning a 10-point score for this variable.

## C. OFFENSE VARIABLE 10

The trial court scored OV 10 at 15 points for defendant's murder conviction.[6] The prosecutor concedes that OV 10 was erroneously scored, and we agree.

OV 10 addresses exploitation of a vulnerable victim, and the trial court must score 15 points if "[p]redatory conduct was involved." MCL 777.40(1)(a). " 'Predatory conduct' means preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). Predatory conduct encompasses "only those forms of 'preoffense conduct' that are commonly understood as being 'predatory' in nature . . . as opposed to purely opportunistic criminal conduct or 'preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection.' " *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011) (citation omitted). In order to find that a defendant engaged in predatory conduct, a trial court must conclude that (1) the defendant engaged in preoffense conduct, (2) the defendant directed that conduct toward "one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation[,]" and (3) the defendant's primary purpose in engaging in the preoffense conduct was victimization. *People v Cannon*, 481 Mich 152, 161-162; 749 NW2d 257 (2008).

There is evidence that defendant placed advertisements for the purpose of inducing potential customers to pay to engage in sexual encounters with AB. However, as the parties point out, there is no evidence that defendant's conduct was intended to lure Calhoun, or anyone else, to the Burgess location for the purpose of killing him. Defendant intended Calhoun to go to the location to engage in sexual acts with AB. Defendant later shot Calhoun during a dispute stemming from Calhoun's request to engage in sexual intercourse without a condom and demand for his money to be returned. The trial court's statement that the "ads that were made and directed at Mr. Baskerville's direction in order to lure for the homicide" or to lure him to a place of danger

---

[6] The trial court also scored OV 10 at 10 points for defendant's human trafficking conviction, but defendant does not challenge that guidelines score on appeal.

are not supported by the record. A preponderance of the evidence does not support that defendant engaged in preoffense conduct directed at a particular victim, Calhoun, with the intent to victimize him by shooting him. Therefore, as the prosecutor concedes, no points should have been assigned to OV 10 for the offense of second-degree murder.

## D. OFFENSE VARIABLE 11

The trial court scored OV 11 at 50 points for defendant's human trafficking conviction. The trial court must score 50 points for OV 11 if "[t]wo or more criminal sexual penetrations occurred." MCL 777.41(1)(a). In scoring OV 11, a trial court may not count a sexual penetration that formed the basis for the conviction, MCL 777.41(2)(c), but may score all other "sexual penetrations of the victim by the offender arising out of the sentencing offense." MCL 777.41(2)(a). The phrase "arising out of" suggests "a causal connection between two events of a sort that is more than incidental." *People v Johnson*, 474 Mich 96, 101; 712 NW2d 703 (2006). "Something that 'aris[es] out of,' or springs from or results from something else, has a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen." *Id.* (alteration in original). Therefore, in order to count the penetrations under OV 11, there must be the requisite relationship between the penetrations by defendant ("the offender") and the human trafficking enterprise.

In scoring OV 11, a trial court may score all "sexual penetrations of the victim by the offender arising out of the sentencing offense," and any additional instances of penetration "extending beyond the sentencing offense" are accounted for in OVs 12 or 13. MCL 777.41(2)(a) and (b). The sentencing offense for which OV 11 was scored is human trafficking involving death, MCL 750.462d(b), MCL 750.462f(1)(d).[7] Thus, sexual penetration was not an element of the sentencing offense; rather, "the enterprise [must not] engage[] in an act proscribed under" the human trafficking provisions of the Michigan Penal Code, MCL 750.462a *et seq*. MCL 750.462d(b). "Forced labor or services" are proscribed by MCL 750.462. Although that can include commercial sexual activity, it can also include any other activities for the benefit of the defendant. MCL 750.462a(g), (*i*), (*l*). In any event, although defendant did not personally engage in sexual relations with the victim for money as part of the commercial enterprise, he did engage in sexual relations with her as a result of her being forced into the criminal enterprise. Thus, defendant's sexual penetrations with the victim arose out of the fact that defendant controlled the victim by forcing her to be in the criminal enterprise. This is a sufficient causal connection between the crime and the sexual penetrations to score them for OV 11. *Johnson*, 474 Mich at 101.

---

[7] At sentencing, the court and parties referred to "the human trafficking offense," without specifying which one, and the record provides no readily apparent further clarification. Generally, the scoring offense will be the conviction with the highest crime classification. See generally *People v Lopez*, 305 Mich App 686, 689-692; 854 NW2d 205 (2014). Human trafficking involving death is a Class A felony, whereas human trafficking of a minor involving commercial sexual activity is a Class B felony. MCL 777.16w. Thus, "the human trafficking offense," i.e., the scoring offense, would have meant human trafficking involving death.

-10-

The prosecution also raises a proxy argument as an alternative basis for scoring 50 points under OV 11 if all of the sexual penetrations of the victim by defendant were deemed to have occurred outside of the human trafficking enterprise and pursuant to an independent relationship between them. We need not and do not decide this argument, but we recognize that it may have arguable merit. A number of sexual penetrations with AB occurred as the express purpose of defendant's human trafficking enterprise. Although they were not literally committed by defendant, they were arranged by defendant, occurred at defendant's volition rather than AB's volition, and occurred completely within defendant's control and at his direction. MCL 777.41 does not define "sexual penetration," but it is well-understood to mean "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body *or of any object* into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(5) (emphasis added). The purpose of the statute is to "protect[] a person's bodily integrity." *People v Anderson*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 345601), slip op at p 4. According to the prosecution, in effect defendant utilized other men as "objects" to effectuate sexual penetrations of AB and that the requirement of a "causal connection" that is "more than incidental" independently establishes that defendant need not personally have committed the penetrations. All of the pay-for-sex sexual penetrations were closely causally linked to the human trafficking offense. Therefore, argues the prosecution, those sexual penetrations "arose from" the human trafficking enterprise.

As noted, although the prosecution's proxy argument is interesting, we need not decide it on the facts of this case. It is clear that there was a more than sufficient causal connection between defendant's crime of human trafficking and his sexual penetrations of the victim. We therefore conclude that the trial court correctly scored OV 11 at 50 points for the human trafficking conviction.

### E. OFFENSE VARIABLE 14

The trial court scored OV 14 at 10 points for defendant's murder conviction. OV 14 addresses the role of the offender, and the trial court must assess 10 points if "[t]he offender was a leader in a multiple offender situation[.]" MCL 777.44(1)(a). "The entire criminal transaction should be considered when scoring this variable." MCL 777.44(2)(a). If only two offenders were involved, only one may be considered the leader. *People v Rhodes (On Remand)*, 305 Mich App 85, 88; 849 NW2d 417 (2014). This Court has noted that "[t]o 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting." *People v Dickinson*, 321 Mich App 1, 22; 909 NW2d 24 (2017) (citation and quotation marks omitted). "[F]or purposes of an OV 14 analysis, a trial court should consider whether the defendant acted first or gave directions or was otherwise a primary causal or coordinating agent." *Id*. (citation and quotation marks omitted).

Considering the entire criminal transaction, the facts of the case provided a reasonable basis for the trial court to conclude that defendant was the leader in a multiple-offender situation. There is evidence that defendant shot Calhoun in AB's presence, during an argument that arose out of an initial disagreement between Calhoun and AB. After the shooting, AB helped defendant drag Calhoun's body out of their house and place it in a dumpster. Defendant later had AB accompany him to move the dumpster containing Calhoun's body and to move Calhoun's vehicle, and he subsequently instructed her to not tell the police about anything that occurred. Finally, although

defendant was clearly in total control over AB, because the autopsy revealed Calhoun to have been shot by two guns, the trial court had a reasonable basis for suspecting that AB may have had more involvement in the shooting than reflected in her testimony. Given these facts, the trial court did not clearly err by finding that a preponderance of the evidence supported that defendant was the leader in a multiple-offender situation. Accordingly, the 10-point score for OV 14 was warranted for the offense of second-degree murder.

## F. OFFENSE VARIABLE 19

OV 19 addresses interference with the administration of justice. The trial court must score 10 points if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). A defendant interferes with the administration of justice by "oppos[ing] so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). In scoring OV 19, a court may consider the defendant's conduct after the completion of the sentencing offense. *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010).

The facts of the case provided a reasonable basis for the trial court to conclude that defendant interfered in the administration of justice when he moved Calhoun's body, in an attempt to conceal or dispose of it, got rid of the gun, moved Calhoun's vehicle, and encouraged AB to tell the police that she did not know anything about this incident. As this Court observed in *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016), "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." Accordingly, the trial court did not err when it assessed 10 points for OV 19.

## G. RESENTENCING

The trial court scored the guidelines for defendant's convictions of second-degree murder, which is a class M2 offense, MCL 777.16p, and human trafficking enterprise involving death, which is a class A offense, MCL 777.16w. As previously stated, the trial court erroneously scored OV 9 at 10 points for defendant's murder and human trafficking convictions, and it erroneously scored OV 10 at 15 points for defendant's murder conviction. Defendant is entitled to have his guidelines scores corrected, because those scores may affect decisions made about him by the Department of Corrections. See *People v Waclawski*, 286 Mich App 634, 689; 780 NW2d 321 (2009); *People v Taylor*, 146 Mich App 203, 205-206; 380 NW2d 47 (1985). However, defendant is not entitled to resentencing, because the scoring errors do not affect the guidelines ranges under which he was sentenced.

For second-degree murder, defendant received a total OV score of 165 points, which, combined with his 80 prior record variable (PRV) points, placed him in the F-III cell of the Class M2 sentencing grid, for which the minimum sentence range is 365 to 1,200 months or life for a fourth-offense habitual offender. MCL 777.61; MCL 777.21(3)(c). Deducting the 25 points attributable to OVs 9 and 10 reduces his OV score to 140 points, which still significantly exceeds the 100 points necessary to place him in OV Level III. MCL 777.61. Thus, that deduction has no effect on defendant's guidelines range for his murder conviction.

For human trafficking enterprise involving death, defendant received a total OV score of 235 points, which, combined with his 80 PRV points, placed him in the F-VI cell of the Class A sentencing grid, for which the minimum sentence range is 270 to 900 months or life for a fourth-offense habitual offender. MCL 777.62; MCL 777.21(3)(c). Deducting the 10 points attributable to OV 9 reduces his OV score to 225 points, which, again, still significantly exceeds the 100 points necessary to place him in OV Level VI.[8] MCL 777.62. Thus, that deduction again has no effect on defendant's guidelines range for his human trafficking conviction. Because the scoring errors do not affect the appropriate guidelines range for either offense, defendant is not entitled to resentencing. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006); *People v Biddles*, 316 Mich App 148, 156; 896 NW2d 461 (2016).

Defendant's convictions and sentences are affirmed. We remand for the ministerial task of correcting defendant's guidelines scores. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Christopher M. Murray
/s/ Jonathan Tukel

---

[8] We note that even if we had found a score of 50 points improper under OV 11, the deduction of an additional 50 points would still leave defendant's total OV score significantly above the threshold for placing him in OV level VI.